DOUGLAS SLOAN (SBN 194996)
City Attorney
SUSAN Y. COLA (SBN 178360)
Assistant City Attorney
IVAN O. CAMPBELL (SBN 216049)
Deputy City Attorney
MICHELLE M. HUGARD (SBN 272077)
Deputy City Attorney
douglas.sloan@santamonica.gov
susan.cola@santamonica.gov
ivan.campbell@santamonica.gov
michelle.hugard@santamonica.gov
City Attorney's Office
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336
Facsimile: (310) 395-6727

BERRY SILBERBERG STOKES PC
CAROL M. SILBERBERG (SBN 217658)
csilberberg@berrysilberberg.com
155 North Lake Avenue, Suite 800
Pasadena, CA 91101
Telephone: (213) 986-2688

Attorneys for Defendants
CITY OF SANTA MONICA, SANTA MONICA
POLICE DEPARTMENT, RAMON BATISTA
DAVID WHITE, and MATTHEW J. LIEB

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| REYES CONTRERAS MURCIA and SHERMAN A. PERRYMAN,<br><br>v.<br>CITY OF SANTA MONICA, a municipal corporation; SANTA MONICA POLICE DEPARTMENT, a public entity; CHIEF RAMON BATISTA, individually and in his official capacity; CITY MANAGER DAVID WHITE; individually and in his official capacity; MATTHEW J. LIEB, individually and in his official capacity; and DOES 1-10, inclusive,<br><br>Defendants. | No.: 2:22-cv-05253-FLA-MAR Hon. Judge Fernando L. Aenlle-Rocha<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:  9/15/2023<br>Time: 1:30 PM<br>Ctrm  6B |

Case No. 2:22-cv-05253-FLA (MARx)

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................3

        A.      Divergent Tow Data ........................................................3

        B.      Claims and Classes Asserted. .......................................4

III.    ARGUMENT ....................................................................................4

        A.      Standard for Class Certification .................................4

        B.      Plaintiffs' Class Certification Motion Fails................5

                1.      Individualized Issues Defeat Commonality...............5

                2.      Plaintiffs Cannot Establish Typicality....................14

                3.      Plaintiffs Cannot Satisfy Rule 23(b)........................16

IV.     CONCLUSION ...............................................................................20

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................17

*Astorga v. County of Los Angeles*,
  2021 WL 5986912 (C.D. Cal. Oct. 21, 2021) ...................................................10

*Avendano-Ruiz v. City of Sebastopol*,
  2018 WL 3619614 (N.D. Cal July 30, 2018) .............................................passim

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023) ..................................................................................19

*Brewster v. City of Los Angeles*,
  2020 WL 12688614 (C.D. Cal. Sept. 11, 2020) ..............................................10

*Brewster v. City of Los Angeles*,
  2023 WL 3374458 (C.D. Cal. May 9, 2023) .............................................10, 11

*Cafeteria & Restaurant Workers v. McElroy*,
  367 U.S. 886 (1961) ...................................................................................................2

*Comcast v. Behrend*,
  569 U.S. 27 (2013) ..............................................................................................5, 17

*Dennis F. v. Aetna Life Ins.*,
  2013 WL 5377144 (N.D. Cal. Sept. 25, 2013) .................................................5

*Duarte v. J.P. Morgan Chase Bank*,
  2014 WL 12561052 (C.D. Cal. Apr. 7, 2014) ................................................17

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ...............................................................................................14

*Lara v. First Nat'l Ins. Co. of Am.*,
  25 F.4th 1134 (9th Cir. 2022) ...........................................................................17

*Miranda v. Bonner*,
  2012 WL 10972131 (C.D. Cal. Jan. 31, 2012) ..........................................1, 6

*Miranda v. City of Cornelius*,
  429 F.3d 858 (9th Cir. 2005) ..............................................................................6

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ...............................................................................................12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ..............................................................................5

*Sandoval v. Cnty. of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) .........................................................................1, 8

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Sandoval v. County of Sonoma*,
   2015 WL 4148261 (N.D. Cal. July 9, 2015)......................................................7, 15

*Sanneman v. Chrysler*,
   191 F.R.D. 441 (E.D. Pa. 2000) ..........................................................................20

*State of California ex rel. Lockyer v. FERC*,
   329 F.3d 700 (9th Cir. 2003)................................................................................12

*Torres v. Goddard*,
   314 F.R.D. 644 (D. Ariz. 2010) ...........................................................12, 13, 19

*Tulsa Prof'l Collection Servs, Inc. v. Pope*,
   485 U.S. 478 (1988) .............................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................4, 5, 16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010)..............................................................................14

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180,
   as amended, 273 F.3d 1266 (9th Cir. 2001)................................................5, 16, 19

## <u>Rules</u>

Fed. R. Civ. P. Rule 23(b)(1) ...................................................................................16

Fed. R. Civ. P. Rule 23(b)(3)...............................................................................5, 19

Fed. R. Civ. Proc. Rule 23(a) ...............................................................................5, 9

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## I.    INTRODUCTION

Plaintiffs seek to certify two classes, even though the Ninth Circuit has already rejected the first and both are so mired in individualized issues that class certification is likewise unfounded. As such, Defendants City of Santa Monica, Santa Monica Police Department, Chief Ramon Batista, City Manager David White, and Officer Matthew J. Lieb (collectively "Defendants") file this Opposition to Plaintiffs' Motion for Class Certification. ("Motion" - Dkt. 51.)

Plaintiffs Murcia and Perryman challenge the constitutionality of vehicle impounds under Vehicle Code section 14602.6 by the City of Santa Monica ("City") and the sufficiency of the notice given with respect to those impounds. However, the unique circumstances of each vehicle's seizure and release directly impact the core question of constitutionality.  The facts of each case matter, and they all differ. It is for this reason the 9th Circuit has already explained:

> The plaintiffs argue that because warrantless seizures are per se unreasonable, every member of their proposed classes could establish liability solely because their vehicles were impounded for 30 days. The plaintiffs thus argue that the district court committed a legal error requiring reversal. But, as this opinion makes clear, *a 30-day impound does not necessarily violate the Fourth Amendment*. Instead, such a prolonged seizure is only unconstitutional when it continues in the absence of a warrant or any exception to the warrant requirement. *See Brewster*, 859 F.3d at 1197.   Thus, the district court correctly concluded that members of the proposed classes would not be able to establish a Fourth Amendment violation based solely on the 30-day impound.

*Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018) (affirming denial of class certification because circumstances of each impound varied) (emphasis added). For this same reason, other courts have also previously denied certification of similar classes.  *See Miranda v. Bonner*, 2012 WL 10972131, at *5 (C.D. Cal. Jan. 31, 2012) (denying class certification and stating that "other than alleging that they have all suffered from a violation of the same statute, Plaintiffs have not demonstrated that a class-wide proceeding will generate common answers."); *Avendano-Ruiz v. City of*

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Sebastopol*, 2018 WL 3619614 (N.D. Cal July 30, 2018) (denying class certification.)

These class certification denials make sense because the only characteristics the putative class members have in common is that their vehicles were impounded pursuant to Vehicle Code section 14602.6. This extremely narrow "common" fact says nothing about whether each or any particular impound violated the Fourth Amendment, because whether a defendant's conduct violated the Fourth Amendment as a matter of law is "dependent upon a variety of circumstances and impoundment decisions made for various reasons." *Miranda*, 2012 WL 10972131 at *5. These case-by-case issues make class certification impossible here. Plaintiffs' Motion simply ignores these issues.

Similarly, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961). Here, while Plaintiffs allege that all putative class members' vehicles were towed pursuant to section 14602.6 rather than 22651(p), the evidence will demonstrate that each impound differed depending on each individual's circumstances. At times, the Registered Owner was not driving the vehicle but still collected it within hours. Other times, the Registered Owner or her designee came to get the car within days. And still other times, the release of the vehicle was delayed by the Registered Owner's conduct, for example because the vehicle was not properly registered. Ultimately, every impound tells a different story and these differences bear directly on the underlying constitutional issues – which means that class certification is impractical and improper. Accordingly, the Court should deny Plaintiffs' Motion for Class Certification consistent with the decisions rendered by the Ninth Circuit in *Sandoval* and the district courts in *Miranda* and *Avendano-Ruiz*– each of which refused to certify even narrower classes based upon nearly identical class theories.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Divergent Tow Data

Plaintiffs' Motion is short on facts and long on unsupported legal conclusions. But even a very limited view of the facts demonstrates that class certification is inappropriate here. Plaintiffs' Motion indicates that there were approximately 91 vehicles towed under the authority of California Vehicle Code section 14602.6 between July 28, 2020, and October 31, 2022 (the "Class Period") (Mot. at 2). Although the Plaintiffs did not actually submit any such evidence to the Court, Plaintiffs ignore that even the very same tow data they rely upon actually demonstrates material differences between individual putative class members that precludes class certification.

While the Plaintiffs would have the Court assume that all 91 vehicles were impounded and retained for at least 30 days – the actual evidence shows this is simply not the case.  In fact, more than half of these vehicles were recovered before thirty (30) days elapsed, including Plaintiff Murcia's vehicle.  (*See* Declaration of Officer Koby Arnold ("Officer Arnold Decl.") at ¶ 10.) And approximately 30% of them were collected within five days of being impounded.  (*Id.*) While a very small number of Registered Owners did not recover their vehicles until 30 days had passed, including Plaintiff Perryman, many Registered Owners did contact the Police Department within days of the impound seeking additional information – including both named Plaintiffs.  (*See, e.g., id.* at ¶¶ 10-13.) Moreover, Plaintiffs ignore the differing bases of the original impoundments – including at times unlicensed drivers who were arrested at the scene, and cars involved in accidents.  (*See, e.g., Id.* at ¶¶ 9, 11.)

Plaintiffs also claim to have common evidence regarding notice that Registered Owners might receive – asserting that the City provides "an identically worded form" the Notice of Stored Vehicle, also known as a Form 180.  (Mot. at 10.) However, this form is not the only information provided to Registered Owners by the

City or the Police Department.  (Officer Arnold Decl. at ¶¶ 5-7.) In fact, Plaintiffs have no common evidence as to the additional information Registered Owners received, and no evidence as to what class members specifically saw or relied upon.

**B.    Claims and Classes Asserted.**

In their First Amended Class Action Complaint, Plaintiffs assert two damages claims arising from the City's impounding of vehicles pursuant to section 14206.6 — claims under the Fourth and Fourteenth Amendments and a Fifth Amendment takes claim.  (Dkt No. 29 at 15-16.)

Based on these claims, Plaintiffs now move for class certification of two classes defined as follows:

a)  Impound Class: Owners of vehicles impounded by the City from July 28, 2022 through October 31, 2022, where such impounds were pursuant to Vehicle Code section 14602.6(a)(1) and

b)  Hearing Class: Owners of vehicles impounded pursuant to Vehicle Code section 14602.6 and to whom the City delivered a "notice of Stored Vehicle (22852 CVC) between July 28, 2020 and October 31, 2022.[1]

(Motion at 1-2.)  As set forth herein, there is no basis to certify either of these overbroad classes.

## III.    ARGUMENT

**A.    Standard for Class Certification**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). Plaintiffs bear the burden of proof at all steps in seeking class certification. *Zinser v. Accufix Rsch. Inst., Inc.*, 253

---

[1] Plaintiffs' definition simply indicates "owners" of vehicles.  It is not clear if Plaintiffs mean registered owners, legal owners, or something else.  If it is something else, it is unclear how such ownership can be established without further individualized inquiries.  As such, the definitions as set forth in Plaintiffs' Motion are vague and ambiguous.

F.3d 1180, 1186, as amended, 273 F.3d 1266 (9th Cir. 2001). Specifically, Plaintiffs must satisfy by a preponderance of the evidence all four threshold requirements under Rule 23(a) (numerosity, commonality, typicality, and adequacy) plus one of the three conditions of Rule 23(b). *See Dennis F. v. Aetna Life Ins.*, 2013 WL 5377144, at *3 (N.D. Cal. Sept. 25, 2013); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc) (adopting preponderance of the evidence standard). Rule 23 is not "a mere pleading standard;" rather, courts must conduct a rigorous analysis and Plaintiffs "must affirmatively demonstrate [their] compliance with the Rule." *Wal-Mart Stores*, 564 U.S. at 350. Furthermore, Plaintiffs must satisfy Rule 23(b)'s requirement "through evidentiary proof." *Comcast v. Behrend*, 569 U.S. 27, 33 (2013).

Plaintiffs move under Rule 23(b)(3), (Mot. at 1), which requires that both "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B.    Plaintiffs' Class Certification Motion Fails**

    **1.    Individualized Issues Defeat Commonality.**

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (quotation and citation omitted). "What matters to class certification … is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (internal quotations and citation omitted). In other words, "it is insufficient to find that all putative class members have suffered a violation of the same provision of law." *Ontiveros v. Safelite Fulfillment, Inc.*, 2017 WL 6043078, at *7 (C.D. Cal. Oct. 16, 2017) (stating class members' claims "must depend upon a common contention"

where "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke") (internal quotations and citation omitted). At bottom, that is all Plaintiffs have argued here; and it is insufficient.

Plaintiffs have failed to show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). As the Supreme Court made clear in *Wal–Mart,* that commonality requires "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, 564 U.S. at 350. Yet here, "whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.'" *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (quoting *Cooper v. California*, 386 U.S. 58, 59 (1967)). This is why numerous courts have denied similar and even more narrowly tailored classes.

In *Miranda v. Bonner*, 2012 WL 10972131 (C.D. Cal. Jan. 31, 2012), the court refused to certify a class of individuals challenging impound decisions for lack of commonality. *Id*. at *5. Applying *Wal–Mart*, the court held that "other than alleging that they have all suffered from a violation of the same [impoundment] statute, Plaintiffs have not demonstrated that a class-wide proceeding will generate common answers." *Id*. "Similar to the plaintiffs in *Wal–Mart*, the purported class here seeks to sue Defendants about hundreds, if not thousands, of impoundment decisions all at once, each of which requires a detailed factual analysis of the reasonableness of the impound." *Id*.

Thereafter, in *Avendano-Ruiz v. Sebastopol*, 2018 WL 3619614, *2 (N.D. Cal. July 30, 2018), the court denied class certification where Plaintiffs sought to certify a similar class: "Persons whose vehicles were seized by the Sebastopol Police Department without a warrant and under the purported authority of Cal. Veh. Code § 14602.6, at any time from July 21, 2013, up through the present, where (a) the vehicle's driver was issued a citation for driving without a valid license (Cal. Veh.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Code § 12500), (b) the driver had one or more prior § 12500 convictions, and (c) the driver was not driving on a suspended, revoked, or restricted driver's license, driving while intoxicated or arrested or cited for any dangerous driving offense." Once again that court too rejected certification efforts finding lack of commonality and typicality. *Id*. at *3-5.

The court first found that "the question of whether the initial seizure of class members' vehicles was constitutionally valid is a fact-specific inquiry that will generate different answers for different individuals." *Id*. at *4. The court also held that the length of time the vehicle was actually held and the reasonableness of that continued intrusion upon the vehicle owner's possessory interest will differ from class member to class member. *Id*. Ultimately the court found a lack of commonality: "Because questions regarding the lawfulness of vehicle impounds suffered by class members cannot be resolved in a single stroke, Avendano-Ruiz fails to satisfy the commonality prong of the Rule 23(a) inquiry." *Id*.

Class certification was denied again in *Sandoval v. County of Sonoma*, 2015 WL 4148261 (N.D. Cal. July 9, 2015). There Plaintiffs attempted to certify an even narrower class than the classes proposed here:

> All persons whose vehicles were seized and impounded by [either the Sonoma Sheriff's Department or the Santa Rosa Police Department] without a warrant and under the purported authority of § 14602.6, at any time from December 2, 2009, up through the present, where (a) the vehicle's driver was issued a citation from driving without a valid license (Cal. Veh. Code § 12500), and (b) the driver was not driving on a suspended, revoked or restricted driver's license, or driving while intoxicated. Class damages exclude damages for the vehicle's initial seizure and removal from the street.

*Id*. at *7. The District Court denied class certification on two different occasions. The District Court explained that (like here) Plaintiffs "continually fail to acknowledge that the circumstances of each impoundment and subsequent decision to release a vehicle are different in each case." *Id*. at *8. As the *Sandoval* Court explained:

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

For potential class members such as Ruiz and Mateos–Sandoval, it was unreasonable for the City or County to hold their vehicles for thirty days, only to return them after that time; these plaintiffs had friends or agents with valid California driver's licenses available to take possession of the vehicle at the time of impoundment or shortly thereafter, and they did not have serious violations on their driving record. *See supra*; October 29, 2014 Order at 1–3. However, for other potential class members, it might not have been unreasonable for the City to impound a vehicle for thirty days, for instance if the owner of the car had never been licensed to drive in any jurisdiction, did not have a California-licensed driver available to take possession of the car, and had a driving record that included multiple, dangerous violations. The fact that this single question of Fourth Amendment reasonableness could be answered differently for these different potential class members demonstrates that Plaintiffs have not shown commonality.

*Id*.

The Ninth Circuit affirmed the denial of class certification in *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018), where the Ninth Circuit explained: "The district court then weighed whether class certification would be appropriate in light of the facts that (1) the plaintiffs had licensed drivers who were able to pick up their cars, whereas other drivers may not have, (2) the plaintiffs were forced to wait the full 30 days, whereas other drivers may not have been, and (3) that other plaintiffs may have never been licensed in a foreign jurisdiction, whereas plaintiffs were, and concluded that the plaintiffs were atypical. This determination does not reflect legal error or a 'clear error in judgment.'" *Id*. at 519.[2] The same deficiencies found by the Ninth Circuit plague this case, compelling a denial of class certification.

Much like the prior cases that denied class certification, Plaintiffs' Motion in this case does nothing to demonstrate that evaluation of their claims will not turn on the individual circumstances.

### a. Impound class

Not a single court has certified the "Impound Class" Plaintiffs seek to certify.

---

[2] Certain of the Plaintiffs' counsel in this action were the same counsel in these prior cases where certification was denied.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Not one. Plaintiffs' proposed class definition, much like the rejected and narrower class definitions in *Miranda*, *Avendano-Ruiz* and *Sandoval*, does not lead to commonality (or predominance – as set forth *infra*).

First, as all of these prior courts have found, Plaintiffs continually fail to acknowledge that the circumstances of each impoundment and subsequent decision to release a vehicle are different in each case – including based upon the reason for impoundment, etc. – and merely repeat the unsupportable refrain that "this is a common issue with the same answer." But nothing is further from the truth.

While Mr. Murcia may have had a friend or agent with a valid California driver's license available to take possession of the vehicle at the time of impoundment or shortly thereafter, for other potential class members it might not have been unreasonable for the City to impound a vehicle for thirty days, for instance if the owner of the car did not have a California-licensed driver available to take possession of the car, and had a driving record that included multiple, dangerous violations. Additionally, certain vehicles had expired registrations, differentiating them from Murcia and Perryman. (Officer Arnold Decl. at ¶ 9.) The fact that this single question of Fourth Amendment reasonableness could be answered differently for different potential class members demonstrates that Plaintiffs have not shown commonality.

Plaintiffs have failed to demonstrate that the factual elements making up the claims of all the class members are sufficiently common to the set of facts in Murcia or Perryman's cases. Put another way, Plaintiffs make absolutely no showing that their personal evidence can or could serve as a proxy for the evidence needed by each individual putative class member to prevail on his or her own personal claims. Since the unique facts surrounding each impound are different, even after the vehicle has been removed from the street, there is not a question here common to all class members that can be resolved with a single stroke. Thus, Plaintiffs have failed to satisfy the requirements of Rule 23(a)(2).

While Plaintiffs cite to *Brewster v. City of Los Angeles*, 2023 WL 3374458 (C.D. Cal. May 9, 2023),[3] none of the orders in *Brewster* address, let alone dictate, the certification of the classes sought by Plaintiffs here. First, while plaintiffs sought to certify multiple classes in *Brewster,* the court actually denied certification of various classes, including where the vehicle was retrieved within 30 days. (*See e.g., Brewster v. City of Los Angeles,* 2020 WL 12688614, at \*14 (C.D. Cal. Sept. 11, 2020) (denying class certification of claims where impound was less than 30 days). Moreover, *Brewster* distinguished cases such as *Miranda* and *Sandoval* because the classes in *Brewster* were much more limited in scope. *Id*. at \*13-14. Here, however, Plaintiffs' proposed classes in their Motion have no such limitations, and are even broader than those previously rejected.[4]  *See also Astorga v. County of Los Angeles*, 2021 WL 5986912, at \*4 (C.D. Cal. Oct. 21, 2021) (denying class certification of Fourth Amendment class, in part, because "the answer to the question of whether the delay was reasonable is dependent upon a variety of circumstances and decisions made for various reasons.")

### B. Hearing Class

Plaintiffs face similar individualized issues with their proposed Hearing Class – especially where they both sought tow hearings.  Plaintiffs' argument is that Form 180 provides constitutionally deficient notice because it fails to distinguish clearly between a hearing based on a car being stored and a hearing based on a car

---

[3] The Defendants respectfully disagree with the *Brewster* ruling concerning class certification (especially where that Court has acknowledged the need for a special master to address certain issues in light of the potential burden on the Court). Nonetheless, the facts and classes here differ significantly and materially. As such, *Brewster* has no bearing on the claims and classes in this case.

[4] It is likely that Plaintiffs have not even attempted to certify a narrower class here because they know that any such class(es) could not meet the numerosity requirements. *See, e.g., Astorga v. County of Los Angeles*, 2021 WL 5986912, at \*3 (C.D. Cal. Oct. 21, 2021) (denying class certification and holding, in part, that "even assuming that the present putative class size is at least thirty-eight individuals, this number is insufficient to meet the numerosity requirement.")

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

being impounded. (Mot. at 10-11.) Plaintiffs rely strongly on statements made by Judge Bernal in *Brewster v. City of Los Angeles* – but Judge Bernal's statements in *Brewster* do not support certifying the proposed broad class here. Importantly, it was not until *after* summary judgment and *after* considering the specific evidence presented in that case and *after* the Court made factual findings did the Court decide to certify a procedural due process class that was limited to individuals whose cars were not retrieved within 30 days. Here, the proposed class is not so limited. Additionally, the summary judgment evidence in *Brewster* demonstrated that Form 180 was the only notice provided to Registered Owners in that case, and Judge Bernal specifically noted that the evidence submitted there demonstrated that individuals were not orally informed of their ability to obtain a tow hearing or how to retrieve their vehicles before thirty days. *Brewster v. City of Los Angeles*, 2023 WL 3374458, at *50 (C. D. Cal. May 9, 2023).

Here, however, the facts and evidence are extremely different. In addition to Form 180, Santa Monica police officers and records personnel often provided additional oral information to drivers and/or vehicle owners. (Officer Arnold Decl. ¶ 5-7.) The evidence demonstrates that individuals often come to the police station – often within a few days – seeking information on how to release a vehicle, which was provided by various officers or records personnel. (Officer Arnold Decl. ¶¶ 5-7.) And, in fact, nearly 30% of the vehicles impounded pursuant to Section 14602.6 during the Class Period were released within five days of impound. (*Id*. at ¶ 10.) Thus, to determine whether the purported notice was sufficient for each putative class member, the Court would have to look beyond the Form 180, and for each vehicle evaluate what additional information was provided by the City and/or Defendants to the driver, Registered Owner, or otherwise. There is no common evidence concerning such notice, as each individual would have to testify as to what information he or she received.

Plaintiffs argue that the use of the "Notice of Stored Vehicle (22852 CVC)"

form, commonly referred to as a "CHP 180" short form "raises constitutional due process notice issues common to *all* owners of § 14602.6 impounded vehicles." (Mot. at 10-11). However, as they do throughout their Motion, Plaintiffs ignore the various individualized issues surrounding the notice provided to putative class members by focusing solely on the CHP 180 form. And these individualized issues surrounding the particular notice received by each putative class member are fatal to the effort to certify a class. That is because, in part, whether notice is constitutionally sufficient to satisfy due process is itself a very individualized question. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is ***notice reasonably calculated, under all the circumstances***, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (emphasis added). *See also Tulsa Prof'l Collection Servs, Inc. v. Pope*, 485 U.S. 478, 484 (1988) ("as *Mullane* itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances"); *State of California ex rel. Lockyer v. FERC*, 329 F.3d 700, 711 (9th Cir. 2003) ("We assess due process case-by-case based on the total circumstances").

This was precisely why the court in *Torres v. Goddard*, 314 F.R.D. 644 (D. Ariz. 2010), denied certification in a putative class action brought by the senders of funds via wire transfers who challenged the seizure and civil forfeiture of these wire transfers (which allegedly involved illegal proceeds) by the Arizona Attorney General. The court denied class certification despite the fact that the government defendants admitted "that they had a policy and practice to forgo sending written notice of seizure or pending forfeiture to the senders of electronic fund transfers that were seized (i.e., class members)." *Id.* at 660. The court found that individual issues regarding which class members received adequate notice predominated over common questions, explaining:

"A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice." ***The question of whether an interested party has been provided constitutionally adequate notice by the government before effecting a forfeiture requires a case-by-case inquiry. As Defendants point out, there are a myriad of ways that senders may have received actual notice***. For example, senders could have learned of the seizure from receivers, who were sent written notice by Defendants. Some senders called the Arizona Financial Crimes Task Force call center and were informed by law enforcement that their transaction had been seized and could be subject to forfeiture. Still others may have received notice through publication in the Arizona Business Gazette. Even among those senders that received actual notice, the content of that notice may have varied. Dan Kelly testified that he informed senders that their money had been seized by the state of Arizona and may be subject to forfeiture. However, there was no standardized language used by all call center operators, and thus, the particular notice given may have varied between senders.

*Id.* at 660–61 (internal citations omitted) (emphasis added).

Similarly, here, as demonstrated by the Declaration of Officer Koby Arnold, there were various ways putative class members could have received notice (in addition to the CHP 180 Form and the presumption of knowledge of the law), including oral notification at the time a vehicle is being impounded, and when registered owners and/or drivers came into the police station and were informed of their rights, including the right to a tow hearing. (Officer Arnold Decl. at ¶¶ 5-7.) Thus, Plaintiffs' myopic focus on the CHP 180 Form is misplaced and ignores the case-by-case, individualized determinations regarding what notice was provided and the actual knowledge of the putative class members that will need to be made by this Court.

As with all of Plaintiffs' proposed class claims, to the extent Plaintiffs' Fifth Amendment takings claim is based on the purported "unlawful 30 day impound fee," (First Amended Complaint, Dkt 29 at 15-16), there is nothing to support Plaintiffs'

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

claim of commonality with respect to such class claims.[5] California Vehicle Code section 22850.5(a) provides that a California public entity "may adopt a regulation, ordinance, or resolution establishing procedures for the release of properly impounded vehicles…and for the imposition of a charge equal to its administrative costs relating to the removal, impound, storage, or release of the vehicles to the registered owner or to the agent of the registered owner." But again, individual issues predominate, and the Court would need to conduct a case-by-case analysis to determine whether any such fee charged to any putative class member exceeded the actual administrative costs relating to the removal, impound, storage, or release of that particular vehicle which could vary from incident to incident.[6]

## 2.  Plaintiffs Cannot Establish Typicality

Plaintiffs have also failed to show that their own claims are typical of the classes they seek to represent, as required by Rule 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotation omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Plaintiffs argue that because their class claims are based upon the same legal theories and all suffered damages they have demonstrated typicality (Mot. at 12.)

---

[5] To the extent Plaintiffs' taking claims are based upon the Fourth Amendment seizure – such claims are derivative and subject to the same myriad of individualized issues precluding class certification set forth herein.

[6] Not only is the question of whether any such fee charged to a particular class member exceeded the actual administrative costs relating to that particular vehicle an individualized case-by-case question, there is no evidence submitted by Plaintiffs to satisfy the numerosity requirement as to how many putative class members actually paid any such fee. For example, in a handful of cases, vehicles were repossessed by legal holders and the drivers themselves did not pay any such fee at all. And Plaintiff Murcia, himself, did not pay any such fee.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

But these facts alone do not demonstrate typicality, especially where the class definition is so broad. Plaintiffs' proposed classes include all people who had their vehicles impounded by Defendants pursuant to section 14602.6. (Mot. at 1-2.) These classes, therefore, include vehicles stopped for different reasons at different locations and people who were able to (and did) retrieve their vehicles prior to the end of the thirty-day period. (*See* Officer Arnold Decl. at ¶ 10.) Somebody who had her car impounded for less than ten days is different from someone who had his car impounded for thirty days. As the *Sandoval* Court explained, "this question goes to more than just damages, because whether a particular prolonged seizure is unreasonable under the Fourth Amendment depends on its duration." *Sandoval*, 2015 WL 4148261 at *9. Moreover, some of the proposed class members were able to retrieve their vehicles in a matter of hours or only a few days. (Officer Arnold Decl. at ¶¶ 10-13.) Therefore, Plaintiffs have not shown that the alleged claims and injuries of Murcia and Perryman are typical of the alleged claims and injuries of the other class members. *See also Avendano-Ruiz*, 2018 WL 3619614 at *5 ("Therefore, the class as currently constituted embraces individuals whose vehicles were impounded under different factual circumstances and retained for different reasons. As a result, Avendano-Ruiz cannot show his claims are typical of other members of the class."); *Miranda*, 2012 WL 10972131 at *5 (determining individualized inquires precluded a finding of typicality)

The same is true with respect to the Hearing Class. As an initial note, Plaintiffs have not even alleged that they both received the Form 180 or were misled by it in any way. However, putting that aside, Plaintiffs have failed to put forth any evidence demonstrating that the information on the Form 180 is the same information that each registered owner received. To the extent individuals in the putative class received oral instructions or information or other notices that differed from information Murcia and Perryman received, then such claims cannot be typical. (Officer Arnold Decl. at ¶¶ 5-7.) Thus, Plaintiffs fail to meet the

requirements of Rule 23(a)(3).

### 3.  Plaintiffs Cannot Satisfy Rule 23(b)

In addition to needing to meet the four requirements of Rule 23(a), which Plaintiffs have failed to do here, class certification is only proper when the proposed class has also met at least one of the three requirements of Rule 23(b). *See Wal-Mart*, 564 U.S. at 345.  Again, Plaintiffs cannot and did not meet any such requirements.

### a.  Rule 23(b)(1) Does Not Apply

In two vague sentences, Plaintiffs claim certification "easily meets" the requirements under Rule 23(b)(1)(A) or (B).  But Plaintiffs do not explain how or why. And nothing is further from the truth.

As an initial note, the Ninth Circuit has held that certification under Rule 23(b)(1)(A) is not appropriate in an action for damages. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (citing *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir. 1976), and *McDonnell Douglas Corp. v. U.S. Dist. Court*, 523 F.2d 1083, 1086 (9th Cir. 1975)).  Here, Plaintiffs simply seek two damages classes, and therefore, beyond any other issue, certification under 23(b)(1)(A) would be unfounded and improper.

With respect to Federal Rule of Civil Procedure 23(b)(1)(B), Rule 23(b)(1)(B) requires Plaintiffs to prove that prosecuting separate actions by individual class members would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). As the Supreme Court explained, Rule 23(b)(1)(B) has a very limited application and includes, for example, "limited fund" cases in which "numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem*

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). That is not the case here. There is no such common fund here and really no argument demonstrating the application of Rule 23(b)(1)(B). As demonstrated *supra*, the Fourth Amendment requires the Court to consider the individualized circumstances surrounding each particular seizure; consequently, determination of Plaintiffs' Fourth Amendment claim will not be "dispositive of the interests" of any other putative class members' potential Fourth Amendment claims.

Plaintiffs have failed to satisfy the requirements of either Rule 23(b)(1)(A) or Rule 23(b)(1)(B) to certify a class in this case. *See, e.g., Avendano-Ruiz*, 2018 WL 3619614 at *5 (rejecting the application of Rule 23(b)(1)(B).

### b. Plaintiffs Failed to Establish A Rule 23(b)(3) Class:

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### i.    There is No Predominance

Predominance focuses on "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (internal quotations and citation omitted). The test requires that "the common issues be qualitatively substantial in relation to the issues peculiar to individual class members." *Duarte v. J.P. Morgan Chase Bank*, 2014 WL 12561052, at *3 (C.D. Cal. Apr. 7, 2014). The same analytical principles of the commonality requirement in 23(a) apply to predominance, although an even higher standard may apply to 23(b)(3). *Comcast Corp.*, 569 U.S. at 34.

As discussed at length with respect to the commonality and typicality factors under Rule 23(a), the fact-intensive nature of a Fourth Amendment prolonged seizure claim and the varying oral notices provided by the City to many putative class

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

members indicates that questions specific to individual class members will predominate over any questions common to the class. Because the duration of each seizure and the particular factual circumstances surrounding it bear directly upon the core question of constitutionality, alongside what notices were provided to each registered owner, class action is not a superior method of adjudicating the claims of putative class members. *See supra* ¶ III.B.1.

In fact, this Court has already noted that individual and different facts might lead to a different constitutional conclusion with respect to Mr. Murcia himself. As the Court's order in this action has stated:

> The court expressly declines to consider whether it would be reasonable for the City or any other governmental body to impound the Subject Vehicle and refuse to release the vehicle or place conditions upon its release if Plaintiff were again to be discovered driving the Subject Vehicle without a valid license. Plaintiff is advised that the court's consideration of the City's community caretaking interests may change if Plaintiff is found to be a repeat offender. This ruling is limited to the specific facts of this case and may not be cited in support of any arguments related to a second or subsequent impoundment of a vehicle driven by Plaintiff, without a valid driver's license, or any other unlicensed driver.

(Dkt 27 at 10-11.) This concern potentially applies to every other putative class member right now. And these issues must be litigated for each one of them on a case-by-case basis. As the Court correctly acknowledges, the community caretaking application depends upon individualized facts – and thus, individualized issues will predominate for each and every class member.

As set forth *supra*, the same holds true with the Hearing Class. Plaintiffs have absolutely no evidence that the only communication provided to each of the 90 registered or legal owners was the Form 180. To the contrary, the clear evidence shows that many class members, in fact, received additional information from the City. (Officer Arnold Decl. at ¶¶ 5-7.) Consequently, numerous vehicles were retrieved within days of impound. (*Id*. at ¶ 10.) Moreover, as some officers or City

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

personnel did orally explain the right to a tow hearing for cars impounded pursuant to section 14602.6, Plaintiffs have not demonstrated that common issues predominate. *See, e.g., Torres v. Goddard*, 314 F.R.D. 644 (D. Ariz. 2010).

The lack of predominance is further bolstered by Plaintiffs' acknowledgement that individual class members will have different damages requiring additional individualized inquiries. Plaintiffs rely on older, out-of-circuit cases to claim (without any evidence) that somehow damages may vary based on the length of impoundment without defeating certifications. However, there still must be commonality and predominance, which is lacking here. The Ninth Circuit recently confirmed certification is improper where the trial of the individualized issues (including damages) would be "prohibitively cumbersome" and the plaintiff had failed to prove that the class issues nevertheless predominated over the individualized issues. *See Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023). As such, the myriad of individualized issues relating to damages further enforces the lack of predominance here.

### ii.    There Is No Superiority

A Rule 23(b)(3) class action can be certified only if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four factors for superiority, which all weigh against certification here. Fed. R. Civ. P. 23(b)(3)(A)-(D); *Zinser*, 253 F.3d at 1190-92. In determining superiority, "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action is not the superior method of adjudication." *Zinser*, 253 F.3d at 1192 (quotation and citation omitted). A class action is not superior when "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually." *Id*. That is exactly the case here.

Plaintiffs assert that the potential recovery is too slight for individual suits (Mot. at 13-14), but courts have held that individual claims are sufficient because

plaintiffs can obtain attorneys' fees or punitive damages. *See, e.g., Sanneman v. Chrysler*, 191 F.R.D. 441, 456 (E.D. Pa. 2000). Here, Plaintiffs claim that each putative class member has approximately a few thousand dollars in damages (Mot. at 13-14), and also seek "attorneys['] fees" (Dkt 29 at ¶ 69). These potential recoveries, which are far in excess of *de minimis* class action claims brought in a consumer context, incentivize any owner who believes he or she has a meritorious individual claim to pursue it.  Additionally, the number of individualized issues that must be litigated to establish each class member's right to recover in this case makes class certification both "unwise and unmanageable."

## IV.   CONCLUSION

Plaintiffs have not come close to meeting their burden to establish the necessary elements for class certification.  Accordingly, Defendants respectfully request that the motion for class certification be denied.

Respectfully submitted,

August 25, 2023                    CAROL M. SILBERBERG
                                   BERRY SILBERBERG STOKES PC


                                   By:  /s/  *Carol M. Silberberg*
                                          Carol M. Silberberg


                                   DOUGLAS SLOAN
                                   City Attorney
                                   SUSAN Y. COLA
                                   Assistant City Attorney
                                   IVAN O. CAMPBELL
                                   Deputy City Attorney
                                   MICHELLE M. HUGARD
                                   Deputy City Attorney

                                   *Attorneys for Defendants*
                                   CITY OF SANTA MONICA, SANTA
                                   MONICA POLICE DEPARTMENT,
                                   RAMON BATISTA, DAVID WHITE, AND
                                   MATTHEW J. LIEB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendants City of Santa Monica, Santa Monica Police Department, Chief Ramon Batista, City Manager David White, and Officer Matthew J. Lieb certifies that this brief contains 6,589 words, which complies with the word limit of L.R. 11-6.1.

August 25, 2023                    CAROL M. SILBERBERG
                                   BERRY SILBERBERG STOKES PC


                                   By:  /s/  *Carol M. Silberberg*
                                            Carol M. Silberberg


                                   DOUGLAS SLOAN
                                   City Attorney
                                   SUSAN Y. COLA
                                   Assistant City Attorney
                                   IVAN O. CAMPBELL
                                   Deputy City Attorney
                                   MICHELLE M. HUGARD
                                   Deputy City Attorney

                                   *Attorneys for Defendants*
                                   CITY OF SANTA MONICA, SANTA
                                   MONICA POLICE DEPARTMENT,
                                   RAMON BATISTA, DAVID WHITE, AND
                                   MATTHEW J. LIEB

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**