**CHRISTIAN CONTRERAS** (CSB 330269)
LAW OFFICES OF CHRISTIAN CONTRERAS, A PROF. CORP.
360 E. 2nd Street, 8th Floor
Los Angeles, CA 90012
(323) 435-8000 / (323) 597-0101 fax
Email: cc@contreras-law.com

**DONALD W. COOK** (CSB 116666)
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 fax
Email: manncooklaw@gmail.com

**CYNTHIA ANDERSON-BARKER** (CSB 175764)
LAW OFFICE OF CYNTHIA ANDERSON-BARKER
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 381-3246 / (213) 252-0091 fax
Email: cablaw@hotmail.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

REYES CONTRERAS MURCIA and SHERMAN A. PERRYMAN, individually and as class representatives,

        Plaintiff,

vs.

CITY OF SANTA MONICA, et al.,

        Defendants.

Case No. 2:22-cv-5253-FLA-MAR

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MATTERS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD W. COOK**

Date: 7/5/24
Time: 1:30 P.M.
Ctrm: 6B (1st Street)

Pretrial: vacated
Trial: vacated

TO THE HON. FERNANDO L. AENLLE-ROCHA, UNITED STATES DISTRICT JUDGE:

      PLEASE TAKE NOTICE that on Friday, July 5, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6B, United States District Court, 350 1st Street, Los Angeles, California, Plaintiffs will move the Court for an order as

00160220.WPD

follows:

● Preliminarily approving the settlement and certifying a class for settlement purposes only with the class defined as follows:

Owners of vehicles impounded by employees of defendants City of Santa Monica and/or Santa Monica Police Department at any time from July 28, 2020 through November 22, 2022, where such impounds were pursuant to Cal. Veh. Code § 14602.6(a)(1);

● Preliminarily appointing Plaintiffs Reyes Contreras Murcia and Sherman A. Perryman as settlement class representatives;

● Preliminarily appointing attorneys Cynthia Anderson-Barker, Christian Contreras and Donald W. Cook as class counsel for settlement purposes;

● Preliminarily find that the terms of the settlement as set forth in ECF 61-1 hereto are fair, reasonable, adequate and comply with F.R.Cv.P. 23(e);

● Approve the form, substance and requirements of the proposed Class Notice (ECF 61-2); the Opt-Out Form (ECF 61-3) and the Update Form (ECF 61-4);

● Set a date for final approval of the class settlement, as well as a date for a class member (a) to object to the settlement and any of its terms, including attorneys' fees, costs and incentive awards; or (b) to exclude him- or herself from the settlement by opting-out;

● Set a date for distribution of settlement funds to class members; and

● Set a date for hearing Plaintiffs' motion for an award of attorneys' fees and costs.

Pursuant to L.R. 7-3 and the settlement agreement the parties reached, Plaintiffs' understanding is that defendants will not oppose this motion.

///

///

///

///

00160220.WPD

The motion will be based upon this notice, the supporting memorandum of points and authorities, Declaration of Donald W. Cook, all pleadings on file with the Court in this action, and any evidence or oral argument provided at the hearing on this motion.

DATED: June 10, 2024

**CYNTHIA ANDERSON-BARKER**
**CHRISTIAN CONTRERAS**
**DONALD W. COOK**
Attorneys for Plaintiffs

By_____
Donald W. Cook

00160220.WPD

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . 8

I.  Case Overview and Relief Requested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.  Thirty-Day Vehicle Impounds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  Cal. Veh. Code § 14602.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    B.  The City's (former) Policy On § 14602.6 Impounds. . . . . . . . . . . . . . . 10

III.  Standards for Class Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.  The Proposed Class Satisfies Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.  Numerosity (Rule 23(a)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    B.  Commonality (Rule 23(a)(2)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    C.  Typicality (Rule 23(a)(3)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    D.  Adequacy of Representation (Rule 23(a)(4)). . . . . . . . . . . . . . . . . . . . . 14

V.  The Proposed Settlement Class Satisfies Rule 23(b) Requirements. . . . . . . . 15

VI.  The Proposed Class Settlement Is Fair, Reasonable And Adequate. . . . . . . . 16

    A.  The Settlement Is The Product Of Arm's-Length Negotiations. . . . . . . 16
    B.  The Settlement Amount Falls Within A Range Of Possible Judicial Approval And Is A Fair And Reasonable Outcome For Class Members . . . . . . . . . . . 17
    C.  The Release Of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    D.  The Settlement Agreement Does Not Improperly Grant Preferential Treatment To The Class Representatives. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    E.  Class Notice and Notification Procedures. . . . . . . . . . . . . . . . . . . . . . . 18

VII.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

00160220.WPD

Table of Authorities

Page(s)

*Cases*

*Allapattah Servs. v. Exxon Corp.,*
    333 F.3d 1248 (11th Cir. Fla. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bertulli v. Indep. Ass'n of Cont'l Pilots,*
    242 F.3d 290 (5th Cir. 2001)áç . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Betts v. Reliable Collection Agency, Ltd.,*
    659 F.2d 1000 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brewster v. Beck,*
    859 F.3d 1194 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

*Brewster v. City of Los Angeles,*
    2023 U.S. Dist. Lexis 124570 (C.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . 13

*Brewster v. City of Los Angeles,*
    672 F.Supp.3d 872 (C.D. Cal. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*California Highway Patrol v. v. Superior Court,*
    162 Cal.App.4th 1144 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chang v. United States,*
    217 F.R.D. 262 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dyer v. Wells Fargo Bank, N.A.,*
    303 F.R.D. 326 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fraser v. Asus Computer Int'l,*
    2012 WL 6680142 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gay v. Waiters' and Dairy Lunchmen's Union,*
    549 F.2d 1330 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*General Telephone Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gunnells v. Healthplan Servs.,*
    348 F.3d 417 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hassine v. Jeffes,*
    846 F.2d 169 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

00160220.WPD

*In re Visa Check/MasterMoney Antitrust Litigation*,
    280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In Re: Northern Dist. Of Cal Dalkon Shield Etc.*,
    693 F.2d 847 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jordan v. County of Los Angeles*,
    669 F.3d 1311 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lerwill Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Radcliffe v. Experian Info. Sols. Inc.*,
    715 F.3d 1157 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sandoval v. County of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stanton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Windham v. American Brands, Inc.*,
    565 F.2d 59, 68 (4th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Constitutions / Statutes / Rules of Court**

Cal. Veh. Code § 14602.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-14, 17

Cal. Veh. Code § 22651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Federal Rules of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11-16, 19

Title 42, United States Code § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

U.S. Const., Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

00160220.WPD

1

***Other Authorities***

2

H. NEWBERG & A. CONTE,
     NEWBERG ON CLASS ACTIONS (4TH ED. 2002) . . . . . . . . . . . . . . . . . . . . . . 15, 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00160220.WPD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Case Overview and Relief Requested.

Under 42 U.S.C. § 1983 and state law, Plaintiffs sued the City of Santa Monica ("City"), its police department ("SMPD") and three city officials (Police Chief Batista, City Manger White, and SMPD Ofc. Lieb). Individually, Plaintiffs Reyes Contreras Murcia and Sherman A. Perryman sue contending defendants wrongfully seized and impounded under Cal. Veh. Code § 14602.6 Plaintiffs' respective vehicles (Murcia vehicle impounded July 23, 2022; Perryman vehicle impounded June 24, 2021). First Amended Complaint ("FAC") ¶¶23-36. Plaintiffs also sue as class representatives for persons whose vehicles defendants impounded under § 14602.6. Though the FAC sought both injunctive relief and damages, the injunctive relief claim became moot upon the City's change of policy concerning § 14602.6 impounds. Declaration of Donald W. Cook ["Cook decl."] ¶7.

Earlier this year following a mediation the parties reached a class-based settlement. In general and without any admission of liability, on behalf of all defendants the City agreed to pay $475,000 for a class-based settlement. The settlement fund covers the damages claim for all class members, plus the cost of class administration, attorneys fees and costs.

On the present motion and pursuant to the settlement agreement (ECF 61-1) Plaintiffs seek certification of a F.R.Cv.P. 23(b)(3) settlement damages class defined as follows:

> Owners of vehicles impounded by employees of defendants City of Santa Monica and/or Santa Monica Police Department at any time from July 28, 2020 through November 22, 2022, where such impounds were pursuant to Cal. Veh. Code § 14602.6(a)(1).

Plaintiffs also seek the Court's order preliminarily appointing Plaintiffs as the settlement class representatives, appointing class counsel, approving the relevant class forms, the settlement terms, as well as setting the relevant dates for final class settlement

1   approval, the bar date and a date for awarding attorneys' fees and costs. *See* ECF 62-1,

2   the proposed form of order.

3       As explained below, the liability issue for all class members is identical and calls

4   for the *same* answer for all class members. Damages can be reliably determined on a

5   class-wide basis for every individual class member. The class size satisfies Rule 23's

6   requirements of numerosity and typicality, while individual class members are identified

7   by name and addresses in accessible records maintained by defendants, the two

8   privately-owned tow yards the City contracts to tow and impound class members'

9   vehicles, and California DMV records.

10      Because of the importance of the issue to certifying the proposed settlement class,

11  Plaintiffs first addresses Cal. Veh. Code § 14602.6, the 30 day vehicle impound statute,

12  and the City's now-discontinued policy enforcing § 14602.6 thirty day vehicle

13  impounds.

14  **II.  Thirty-Day Vehicle Impounds.**

15      **A.  Cal. Veh. Code § 14602.6.**

16      Enacted in 1994, § 14602.6 permits a police officer to seize and remove from the

17  street a vehicle if its driver is unlicensed as defined in subsection (a)(1) – never been

18  licensed; suspended license for a traffic related offense; or a restricted license that

19  requires its holder to drive only vehicles with an approved anti-lock device (prevents

20  vehicle operation if the driver is intoxicated). If the officer elects to invoke § 14602.6,

21  then the vehicle must be impounded for 30 days. Section 14602.6(a)(1); *Brewster v.*

22  *Beck*, 859 F.3d 1194, 1195-96 (9th Cir. 2017).

23      Section 14602.6 has exceptions to the mandatory 30 day impound. They are (a)

24  if the driver was not unlicensed within the meaning of subdivision (a)(1); if the police

25  agency that seized the vehicle concludes there are "mitigating circumstances" for an

26  early release (the statute, however, does not define "mitigating circumstances"); if the

27  vehicle owner shows that the § 14602.6(a)(1) unlicensed driver is now licensed; if the

28  vehicle was stolen; if the vehicle was being driven under bailment (e.g., parking

00160220.WPD

attendant); if the vehicle was owned by a rental car agency (Hertz; Avis, etc.); or if the vehicle's *legal* owner (the finance company) reclaims the vehicle. *See* subdivisions (b) through (f) and (h) to § 14602.6.[1]

Significantly, § 14602.6 has *no* requirement for early release if the vehicle is being held in the absence of community caretaking or other Fourth Amendment justification, see *Miranda v. City of Cornelius*, 429 F.3d 858, 862-64 (9th Cir. 2005).

An alternative statute for removing a vehicle from a public street because its driver is unlicensed, is subdivision (p) of Cal. Veh. Code § 22651. Section 22651(p), unlike § 14602.6, applies to *any* unlicensed driver. The other major difference is that when the police seize a vehicle pursuant to § 22651(p), its owner can *immediately* reclaim the vehicle upon (a) payment of towing and storage charges and (b) presentation of a licensed driver to take possession. *Brewster*, 859 F.3d at 1197-98.

When a vehicle is subject to seizure under either § 14602.6 or § 22651(p), it is discretionary for the officer or agency as to which statute to invoke. *California Highway Patrol v. v. Superior Court*, 162 Cal.App.4th 1144, 1148 (2008).[2]

**B. The City's (former) Policy On § 14602.6 Impounds.**

Before November 22, 2022 when the City instructed SMPD officers to release a § 14602.6 impounded vehicle as if it had been impounded under § 22651(p) (immediate release required upon the vehicle owner presenting a licensed driver to take possession and payment of accrued towing and storage charges), defendants would *not* release a vehicle from a 30 day impound if the SMPD officials believed the vehicle's owner may drive the vehicle in the future as an unlicensed driver. That is, defendants treated an

---

[1] If a legal owner or car rental agency reclaims the vehicle, the legal owner or agency must continue to enforce the 30 day impound. See § 14602.6, subdivisions (g)(1) and (h)(1).

[2] Because § 14602.6(a)(1) applies only to a subset of unlicensed drivers whereas § 22651(p) applies to *all* unlicensed drivers, by definition a § 14602.6(a)(1) unlicensed driver is also unlicensed within the meaning § 22651(p).

owner's possible future driving as an unlicensed driver as constituting "community caretaking" that authorized the 30 day impound.

The above conclusion is shown by defendants' § 14602.6 impound of Plaintiff Murcia's vehicle. When SMPD impounded Mr. Murcia's vehicle, he was an unlicensed driver within the meaning of § 14602.6(a)(1). Furthermore, SMPD officials claimed that because Mr. Murcia allegedly told SMPD officers he would continue to drive his vehicle as an unlicensed driver, that fact meant that under § 14602.6, his vehicle would be impounded for 30 days. In opposing Plaintiff Murcia's TRO application (ECF 16 [filed 8/2/22]), defendants submitted a declaration from Matthew Lieb, the SMPD officer responsible for "enforcement of the state Vehicle Code" including § 14602.6 impounds. ECF 19-2 (filed 8/3/22) @ 2:1-3. In his declaration Lieb stated he "determined that it was very likely that Mr. Murcia, who does not have a driver's license, would continue to operate the vehicle if it were to be released to him or to another individual," and thus "Mr. Murcia's vehicle to Mr. Murcia or to his agent prior to the end of the 30-day period *would be inconsistent with Santa Monica Policy Manual section 503.2.1*." ECF 19-2 @ 3:7-9 (emphasis added).

**III.  Standards for Class Certification.**

Under F.R.Cv.P. 23 ("Rule 23"), a party seeking class certification must establish the following prerequisites:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate one of the following: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice

individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Rule 23(b)(1)–(3).

Rule 23 further provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues," Rule 23(c)(4), or the "class may be divided into subclasses that are each treated as a class under this rule," Rule 23(c)(5). "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

## IV. The Proposed Class Satisfies Rule 23(a).

### A. Numerosity (Rule 23(a)(1)).

The damages class consist of approximately 91 vehicle owners whose vehicles defendants seized and impounded at any time from July 28, 2020, to November 22, 2022 ("the Class period"), under the authority of Cal. Veh. Code § 14602.6. Class members are identifiable by computer data that accurately identifies, by vehicle's owner's name and address, license plate number and/or vehicle identification number ("VIN") vehicles defendants directed be impounded under § 14602.6. The computer data also establishes the out-of-pocket expenses each class member incurred in connection with the vehicles' seizure and storage. Cook decl. ¶¶4-6.

The class size establishes numerosity. *E.g.*, *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir.), *vacated on oth. grds.,* 459 U.S. 810 (1982); *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 (9th Cir. 1977).

### B. Commonality (Rule 23(a)(2)).

*Fourth Amendment* – For all class members, defendants effected and enforced § 14602.6 thirty day vehicle impounds without obtaining a warrant or judicial review of any type. Cook decl. ¶9. Thus, for every class member the common dispositive issue

00160220.WPD

is the absence of Fourth Amendment justification for the continued impoundment of the vehicle even though its registered owner is willing and able to reclaim the vehicle (by payment of accrued fees and presentation of a licensed driver to take possession). *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017); *Sandoval v. County of Sonoma*, 912 F.3d 509, 516-17 (9th Cir. 2018); *Brewster v. City of Los Angeles*, 2023 U.S. Dist. Lexis 124570 (C.D. Cal. 2023) @ *33-*35 (filed 7/17/23).

*Fifth Amendment (Takings Claim)* – The absence of Fourth Amendment justification for the thirty day § 14602.6 impound also establishes a Fifth Amendment taking of property without justification. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005) ("[I]f a government action is found to be impermissible — for instance because it fails to meet the 'public use' requirement . . . that is the end of the [Takings Clause] inquiry. No amount of compensation can authorize such action.").

Here, Plaintiffs contend defendants imposed § 14602.6 thirty day impounds rather than simply removing the vehicle from the street pursuant to § 22651(p), which would have enabled the owner to immediately claim his vehicle, see *Brewster*, 859 F.3d at 1197-98, so as to punish the vehicle's owner for permitting an unlicensed driver to drive the vehicle. FAC ¶65. That is a common issue with the same answer for all class members. *Brewster v. City of Los Angeles*, 672 F.Supp.3d 872, 973-76 (C.D. Cal. 2023).

## C. Typicality (Rule 23(a)(3)).

"The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982); *Stanton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003) (same). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). If the representative "claim arises from the same event, practice or course of conduct … and is based upon the same legal theory, varying factual differences" will not render the class representative's claim atypical. *Jordan*, 669 F.2d

at 1321. Commonality and typicality "mandate only that complainants' claims be common, and not in conflict." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3rd Cir. 1988). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' claims are based upon the same legal theories as the claims of the class members they represent, with all claims arising from the same municipal policy (enforcement of § 14602.6 thirty day impounds). Moreover, both Plaintiffs and the class members all suffered actual damages as a result of having their vehicles wrongfully seized and impounded. The actual damages suffered by these representative plaintiffs – having to pay to get their vehicles out of impound – are similar in type and amount to the actual damages suffered by each member of the class.

**D. Adequacy of Representation (Rule 23(a)(4)).**

*Class Representatives Interests Are Not Antagonistic To The Interests Of The Class*

Rule 23(a)(4)'s requirement for adequate representation is met when 1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class, and 2) counsel for the plaintiffs is competent to represent the class. *Lerwill Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978); *In Re: Northern Dist. Of Cal Dalkon Shield Etc.,* 693 F.2d 847, 855 (9th Cir. 1982); *Stanton,* 327 F.3d at 957.

The interests of all members of the class are aligned in this action. There is no anticipated or actual conflict of interests.  There is no conflict of interest between the damages claims of the named Plaintiffs and the proposed classes. Claims of both are based on wrongful impoundment of vehicles under § 14602.6 pursuant to the same municipal policy generally applicable to all vehicle owners.

 Meanwhile, counsel has successfully represented plaintiffs in other class actions involving civil rights allegations. The defendants' actions subjected all of the plaintiff

class to the same unlawful conduct. Plaintiffs and class members all suffered substantially similar injuries – temporary loss of property requiring a monetary payment for its return – differing only as to degree (*i.e.*, amount paid to recover the vehicle) while constituting the same type of injury pursuant to the same type of same police conduct. So the named Plaintiffs have suffered injuries that are representative of the class.

*Counsel Is Well Qualified To Represent The Class*

Plaintiffs' counsel include Donald W. Cook and Cynthia Anderson-Barker, both experienced class action and civil rights practitioners. Furthermore, Mr. Cook has substantial class action experience in successfully representing owners of impounded vehicles. Cook decl. ¶¶12-15.

## V.  The Proposed Settlement Class Satisfies Rule 23(b) Requirements.

"In order to be maintained as a class action, a representative suit must comply with the requirements of each of the four subsections of Rule 23(a), and must satisfy the additional requirements of at least one of the three subdivisions of Rule 23(b)." H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4TH ED. 2002) § 4:1. Plaintiffs' damages class easily meets the requirements of 23(b)(1) and (3).

Rule 23(b)(1) provides that a class action may be maintained where prosecution by or against individual class members would create a risk of either (a) inconsistent or varying adjudications that could establish incompatible standards, or (b) adjudication with respect to individual class members that would, as a practical matter, dispose of others' claims or substantially impair or impede their ability to defend their interests. Under this standard, the defendants should prefer a class action. Although certification under this rule is relatively rare, it has been expressly applied in other civil rights cases. *See, e.g., Chang v. United States*, 217 F.R.D. 262, 273 n.5 (D.D.C. 2003).

The class action is also the "superior" form of adjudication. The value of each class member is relatively small (a few thousand dollars); thus, because the interest of any class member in bringing her own lawsuit is low, certification is favored. *E.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Tardiff v. Knox County*, 365

F.3d 1, 7 (1st Cir. 2004). No class member has a large claim or stake in controlling the litigation; there are no similar cases pending; and this Court is an appropriate forum. Consequently, this case is very manageable, particularly since the identity of class members and their individual damages are readily determinable from the data available from the two tow companies, Santa Monica, and the DMV. *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977) (no manageability problem where formula calculations can determine damages). And given that common questions of fact and law predominate, Rule 23(b)(3) is satisfied.

Finally, that damages for the individual Plaintiffs and class members may vary depending on length of wrongful impoundment, that does not defeat certification. *Tardiff v. Knox County*, 365 F.3d 1, 6 (1st Cir. 2004); *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2nd Cir. 2001); *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 426 (4th Cir. 2003); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. Fla. 2003); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004).

## VI.  The Proposed Class Settlement Is Fair, Reasonable And Adequate.

### A.  The Settlement Is The Product Of Arm's-Length Negotiations.

The Ninth Circuit "has long deferred to the private consensual decision of the parties." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). When the proposed settlement is "the product of an arms-length, non-collusive, negotiated resolution," the Court should afford the parties the presumption that the settlement is fair and reasonable. *Id.*

After initially contesting the merits of Plaintiffs' claim in opposing the 2022 TRO application, the parties reached a settlement before an experienced mediator (Richard Copeland). As is usually the case in most settlements, the two sides compromised while defendants made no admission of liability. Cook decl. ¶10. There is thus no evidence that the settlement "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Rodriguez*, 563 F.3d at 956.

**B.  The Settlement Amount Falls Within A Range Of Possible Judicial Approval And Is A Fair And Reasonable Outcome For Class Members.**

The compensation for the 91 class members comes from a $475,000.00 settlement payment. After the damages and incentive payments of $25,000 to the two Plaintiffs, payment of costs (including the projected cost of class administration) estimated not to exceed $25,000, and attorneys fees that will not exceed $235,000, there remains $210,000 for distribution to class members. That equates to a recovery of about $2,252 per class member ($205,000 / 91). This is a reasonable and fair compromise for each class member's claim, particularly considering that defendants have not admitted liability and maintain their position that the City's § 14602.6 impound policy was constitutional. Generally, nearly all class members had an out-of-pocket loss ranging from about $950 at the lower end, to over $4,000 at the upper end. Given the significant risks and delay of continued litigation in this case, the benefits to the class fall within the range of reasonableness. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (Cleaned up.)

**C.  The Release Of Claims.**

Excluding those class members who opt-out, the settlement agreement (ECF 61-1) at ¶30(B) enjoins class members from pursuing claims a class member had that arises from defendants' impounding their vehicle as alleged in the FAC. Thus, since class members are not barred from pursuing claims unrelated to those asserted in this lawsuit, the settlement release adequately balances fairness to Plaintiffs and the absent class members with defendants' interest in ending this litigation. *See, e.g.*, *Fraser v. Asus Computer Int'l*, 2012 WL 6680142, at *4 (N.D. Cal. 2012) (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

///

00160220.WPD

**D.  The Settlement Agreement Does Not Improperly Grant Preferential Treatment To The Class Representatives.**

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Pursuant to the settlement and beyond their out-of-pocket loss and loss of use of their respective vehicles, class representative Murcia will receive an incentive award of about $8,000 (total to Murcia: $10,000) while class representative Perryman will receive an incentive award of about $11,400 (total to Perryman: $15,000). The Perryman payment is higher because he lost the use of his vehicle for 31 days and had to pay over $3,600 to retrieve his vehicle; for Murcia, his out-of-pocket loss was less since his vehicle was impounded for only 18 days and was released without Murcia having to pay for towing and storage charges.

Because the incentive payments are presumptively reasonable, see *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014), and are not conditioned on the named Plaintiffs' approval of the settlement, there is no conflict of interest between the named Plaintiffs and class members.

**E.  Class Notice and Notification Procedures.**

Plaintiffs propose that Class Action Claims Administration, Inc. ("Claims Administration") be appointed as the Class Administrator.  Class members will receive notice by first class mail, Cook decl. ¶12, which will consist of the Class Notice and Proposed Class Settlement and Hearing ("Notice") (see ECF 61-2), Class Action Opt-Out Form ("Opt-Out Form") (ECF 61-3) and an Update Address Form ("Address Form") (ECF 61-4) (collectively "Notice Package"). In addition to mailing the Notice Packet, Class Administration will establish a "dedicated website with downloadable form, and offering online submission forms." Cook decl. ¶12. This is adequate. See 3 NEWBERG ON CLASS ACTIONS § 8:17, AT 283 (5TH ED. 2014) ("[A]s the internet develops, it is easy, and relatively costless, to provide class members free access to a set

00160220.WPD

of documents in the lawsuit at settlement, not just to a synopsis describing the settlement. A settlement website may encompass content ranging from the complaint to the settlement agreement and fee petition.").

The Notice Package describes the nature of the action, including the class claims and class definition. F.R.Cv.P. 23(c)(2)(B)(i), (ii) & (iii). The Notice Package explains the settlement, including the settlement amount, the distribution of that amount, and the release. It includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendants. F.R.Cv.P. 23(c)(2)(B)(v)-(vi). Finally, the Notice provides information about the Final Fairness Hearing.

Based on the foregoing, there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members. Thus, the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and complies with the requirements of due process.

**VII.  Conclusion.**

For the forgoing reasons, the instant motion should be granted.

DATED: June 10, 2024

**CYNTHIA ANDERSON-BARKER**
**CHRISTIAN CONTRERAS**
**DONALD W. COOK**
Attorneys for Plaintiffs

By _____
                Donald W. Cook

00160220.WPD

### DECLARATION OF DONALD W. COOK

I, DONALD W. COOK, declare:

1. I am an attorney and a member of the bar of this Court. I am one of the attorneys representing the Plaintiffs.

2. I have represented, and continue to represent, numerous plaintiffs who have sued contending that a police department unlawfully seized and impounded their vehicles. Besides the present case, "30-day impound" cases in which I represented the plaintiffs are *Ricardo Castillo et al. v. City of Maywood, et al.*, L.A.S.C. BC 469942; *Carol Watson v. City of Los Angeles*, L.A.S.C. No. BC480373; *Salazar v. Schwarzenegger*, 2:07-cv-1854 SJO (VBKx); *Leonardo Gonzalez-Tzita v. City of Los Angeles*, 2:16-cv-194 FMO (Ex); *Brewster v. City of Los Angeles*, 5:14-cv-2257 JGB (SPx); *Mateos-Sandoval v. County of Sonoma*, 3:11-cv-5817-EMC (Northern District of California); *Mann et al v. State of California et al.*, L.A.S.C. No. 20STCV21366.

3. Over the last 16 years, on behalf of my clients I have sued over 25 different agencies throughout the state regarding vehicle impounds under Cal. Veh. Code § 14602.6. Agencies sued range as far south as San Diego County and as far north as Sonoma County. On my clients' behalf I have also sued the California Highway Patrol ("CHP") over its 30 day impound policy.

4. In discovery in this lawsuit I have determined that for purposes of towing and storing vehicle Santa Monica officers direct be seized, Santa Monica contracts with two privately-owned vehicle towing and storage garages: All City Tow and Tip Top Tow Service. In response to subpoenas I issued, both company produced their computer data on vehicles these companies towed at the behest of Santa Monica officials. The data (produced in electronic form readable by Microsoft Excel) includes, for each vehicle towed, the following:

   A. The date the vehicle was towed, and its release date;

   B. Vehicle identifiers (make, model, year, license number and VIN);

   C. The police agency that directed the vehicle be towed;

-20-

00160220.WPD

D. The statutory authority under which the vehicle was towed;

E. The accrued towing and storage charges, and the amount;

F. Who paid the charges for the vehicle's release (who may or may not be the owner).

5. Additionally, from the discovery defendants have produced to-date which included a partial production of Santa Monica's electronic data recording vehicles towed and impounded, the Santa Monica data appears to also include, along with the vehicle's identifiers, the vehicle owner's identifiers. In any event, I know from my experience in representing the plaintiffs in the *Gonzalez-Tzita* lawsuit, that by using the VIN identifiers the two towing companies produced, via subpoena on the California DMV Plaintiffs can obtain from the DMV the name and address of every owner of a vehicle Santa Monica impounded under Cal. Veh. Code § 14602.6.

6. The towing data produced to-date shows that between July 28, 2020 and November 22, 2022, Santa Monica officials seized and impounded under § 14602.6, 91 vehicles. Of that number, 33 were sold at the statutory lien sale. *See* Cal. Veh. Code § 22851(a) (Lien created in favor of the tow company for towing and storage charges.). According to the computer data, the remaining vehicles were reclaimed by their owners. Of those who reclaimed their vehicles, they paid different amounts depending on how long the vehicle was impounded. For most, per the computer data the out-of-pocket loss ranged from about $950 at the lower end, to over $4,000 at the upper end. For the class members who reclaimed their vehicles, their out-of-pocket cost to recover their vehicles was about $186,668; for class members whose vehicles were sold at a lien sale, the total estimated value for their vehicles is $31,350. For all class members, their total out-of-pocket loss is about $218,018.

7. On November 11, 2022, the SMPD instructed its officers to no longer impose 30 day impounds under § 14602.6. *See* **Exhibit A**, the 11/11/22 SMPD email defendants produced in discovery.

8. Plaintiff Mr. Perryman, whose vehicle was impounded under § 14602.6 in July

2021, had to pay the City an administrative release fee of $1,095.05 in additional to paying the tow company about $2,500 in towing and storage charges.

9. The discovery defendants produced established that the SMPD impounded vehicles without ever seeking judicial review, whether before or after the impound.

10. On January 24, 2024, the parties held an all-day mediation before Richard Copeland, an experienced mediator from the Central District's mediator panel. That session was follows by numerous over-the-phone and email discussions between Mr. Copeland and the parties' attorney, ultimately resulting in the an agreement to resolve the case on a class basis, for a total sum of $475,000.00 paid by the City of Santa Monica. Submitted as ECF 61-1 is a copy of the settlement agreement. It has been approved by all counsel, the parties and by the Santa Monica City Council. It will be fully signed in a few days and submitted to the Court. The settlement is a compromise – Plaintiffs have not recovered all damages they claim they sustained (e.g., there is no recovery for statutory damages under Cal. Civ. Code § 52.1) while the City has agreed to pay a substantial amount despite the parties' agreement that defendants have made no admission of liability with defendants maintaining their claim that the City's § 14602.6 impound policy was constitutional.

11. Regarding attorneys' fees, the fees presently exceed just over $200,000. Because additional attorney time will be expended in seeking final class settlement approval, by the time the case concludes I expect fees will exceed $240,000, at hourly rates awarded my office in 2020 for similar class action litigation. However, to cap the fees and insure adequate compensation for class members, Plaintiffs will not seek any more than $220,000 in fees.

12. The estimated costs for resolving this case as a class-based settlement is about $25,000. That includes the cost for class administration (proposed class administrator is Class Action Claims Administration, Inc., based in Reno, Nevada). The class administrator will mail to class members via first class mail the class notices (in both English and Spanish) and related documents (see ECF 61-2, -3 and -4), will maintain

a website for downloading the class documents and related litigation filings; issue distribution checks and maintain records thereof; and track and maintain the records of those class members, if any, who opt-out. If cost of class administration exceeds the projected cost of $25,000, the additional amount will be paid from the amount reserved for attorneys' fees (the $220,000 mentioned above). If costs are less than $25,000, the difference will be added to the compensation distributed to class members (but not including the two Plaintiffs).

13. Thus, under the settlement there will be about at least $205,000 for payment to the 91 class members. The exact amount each class member receives will be either (a) pro-rata to the amount each class member paid to recover their vehicle from the impound storage lot, or (b) if a class member's vehicle was not recovered but instead sold at a statutory § 22851(a) lien sale, the sale amount of the vehicle at the lien sale.

*QUALIFICATIONS OF COUNSEL*

14. Along with other counsel and my partner (now retired), for nearly 40 years I have been successfully representing Plaintiffs in class action lawsuits for injunctive relief and damages sought under 42 U.S.C. § 1983:

● *Lamya Brewster et al. v. City of Los Angeles*, 5:14-cv-2257 JGB (SPx) (Class action against City of Los Angeles and LAPD over its § 14602.6 thirty day vehicle impound policy; summary judgment granted for plaintiffs and class members. Reported decisions at *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), and *Brewster v. City of Los Angeles*, 672 F.Supp.3d 872 (C.D. Cal. 2023).);

● *Gonzalez-Tzita et al. v. City of Los Angeles et al.*, 2:16-cv-194 FMO (Class action against City of Los Angeles over its 30 day vehicle impound policy for "bandit taxis." Class of vehicle owners certified and class settlement of $1,700,000 approved.);

● *Workers Organizing Network Multi-Ethnic Immigrant et al., v. City of Los Angeles, et al.*, CV07-3072 AHM (FMMx) ("MIWON") (injunctive relief / damages class action);

● *Lopez v. Youngblood*, EDCV-F-07-0474 DLB (damages strip search class

action against Kern County certified);

- *Craft v. County of San Bernardino*, EDCV 05-0359 SGL (OPx) (damages class action for strip searching jail inmates; settlement for approximately $26,000,000);

- *Valenzuela v. County of Los Angeles*, CV 02-9092 ABC (JWJx) (class action for injunctive relief against LASD on behalf of Los Angeles County hearing impaired residents);

- *Berg v. City of Los Angeles*, CV01-7046 FMC (damages class action against LAPD for shooting "less lethal" weapons into crowds during demonstration at 2000 Democratic National Convention in Los Angeles; settled in 2004 for approximately $1.2 million);

- *Doe 1 v. County of San Bernardino*, EDCV01-523 RT (class action that successfully sought reform of County's treatment of, and educational services provided to, juveniles adjudicated wards of the juvenile court; nominated (with others) for 2007 Trial Lawyer of the Year for participation in this lawsuit);

- *Diamond v. Los Angeles Police Department*, CV 00-11110 ABC (AIJx) (class action against LAPD for injunctive relief on behalf of Los Angeles City hearing-impaired residents);

- *Williams v. County of Los Angeles*, CV 97-3826 CW (successful reformation of County's strip search policy for court-ordered releases; structural reforms to eliminate overdetentions; payment of $27,000,000 in class damages) (*Williams* was consolidated with a number of similar actions (CV 98-02475-CW; CV 98-03187-CW; CV 98-09573-CW; CV 98-09574-CW; CV 98-09575-CW; CV 98-09683-CW; CV 98-09695-CW; CV-99-00586);

- *Thomas v. County of Los Angeles*, CV 90-5217 TJH (Ex) (reported in part at *Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992) (certified class action for injunctive relief against law enforcement agency). Following a jury trial, Thomas settled in 1995 for $7,500,000. The settlement included an agreement the Sheriff's Department would implement a force tracking system, which the Department's Special

-24-

Counsel describes as "a first-rate system by which to monitor trends in personnel performance on an individual-by-individual basis or by groupings of individuals.").

15. Although the following cases were not certified as class actions, I have been co-counsel in numerous cases which had many of the attributes of a class action lawsuit, e.g., *Palmer v. City of Los Angeles*, CV88-06376 RMT (JRx) ($3.5 million for about 55 plaintiffs arising from LAPD's destruction of homes and wrongful arrests); *Lawson v. City of Los Angeles*, LA Superior No. BC 031232 ($3.5 million for approximately 60 victims of LAPD police dogs, plus structural reform of canine program).

16. Attached as **Exhibit B** is a list of my published decisions in which I secured a favorable outcome for my clients.

17. My co-counsel Cynthia Anderson-Barker was also co-counsel for the plaintiffs in the above listed class action cases of *Workers Organizing Network Multi-Ethnic Immigrant*, *Berg*, *Craft* and *Doe 1*.

I declare under penalty of perjury that the foregoing is true and correct. Executed June 10, 2024, at Los Angeles, California.

_____
Donald W. Cook

CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this motion (not including the caption page, table of contents, table of authorities or exhibits) contains 5,759 words and is no more than 18 pages.

DATED: June 10, 2024

**DONALD W. COOK**
Attorney for Plaintiffs

By_____
Donald W. Cook

**From:** Cody Green
**To:** Police Group
**Subject:** 30 Day Impounds - Do not place vehicles on 30 day holds/impounds
**Date:** Friday, November 11, 2022 2:25:37 PM
**Attachments:** image004.png

Good Afternoon,

**Moving forward do not use Vehicle Code Section 14602.6(a) to impose a 30 day hold on a vehicle for a person cited or arrested for driving on a suspended license (this is the most commonly used 30 day hold).** Do not use 23109.2 CVC or 23195 CVC or 14602.7 CVC- **Do not place any vehicle on a 30 day hold without a warrant.**

_
If there are any vehicles currently on a 30 day hold under this section please treat them as if they do not have a 30 day hold on them. You may have to inform the tow company that the 30 day hold is no longer valid.

The courts have ruled that a 30 day hold for a violation of 14602.6(a)(1) CVC, which imposes a 30 day hold when a person is arrested or cited for driving on a suspended license, is not valid and **violates their 4th amendment rights**. If you place a vehicle on a 30 day hold without a warrant or refuse to release a vehicle prior to 30 days based on 14602.6(a) you may be violating their rights.

All vehicles towed should be treated as regular impounds so long as the owner meets the following:

1. They are the registered owner of the vehicle.
2. They have a licensed driver with them when they retrieve the vehicle (any person may qualify – no need to be related to the owner & no need for them to be an adult).
3. They pay the applicable tow fee (regular tow fee- not a 30 day tow fee)
4. The registration is current and valid.

Additionally, a valid drivers license means a license issued by any state or nation or country- even if you can't validate it.

Example: A registered owner of a vehicle come in with a friend who has a driver's license from France (or any other country), they can get a vehicle release from us. They need to have valid registration and pay the regular tow fee (not 30 day fee).

Once again, do not charge people for 30 days holds, a valid license from any state or country is considered a licensed driver and do not use 14602.6(a) to impose 30 day holds on vehicles.

Please **use tow section 23651(p) CVC** to cite people if they don't have a license or they have any expired license.

Below is a list of sections which can be used (except for the ones with 30 day holds).



**PUBLISHED DECISIONS**
(Donald W. Cook)
(June 2024)

● *Brewster et al v. City of Los Angeles et al*, 672 F.Supp.3d 872 (C.D. Cal. 2023) (Granting summary judgment in plaintiffs favor and of the classes they represented, holding that the defendants' 30 day vehicle impound policy violated the Fourth and Fifth Amendments).

● *Ordonez v. Stanley*, 495 F.Supp.3d 855 (C.D. Cal. 2020) (Holding that CHP officers violated Fourth Amendment and due process in effecting 30 day vehicle impound).

● *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018) (Holds that municipal defendants' 30 day impounds of plaintiffs' vehicles violated the Fourth Amendment and that municipal defendants were liable for the § 1983 violations.).

● *Brewster v. Charlie Beck*, 859 F.3d 1194 (9th Cir. 2017) (Holds that 30 day vehicle impound under Cal. Veh. Code § 14602.6(a)(1) is a Fourth Amendment "seizure" that must be justified by either a warrant or exception to the warrant requirement; judgment dismissing lawsuit reversed.).

● *City of Los Angeles v. Superior Court (Anderson-Barker)*, 9 Cal.App.5th 272 (2017) (California Public Records Act. Court holds that in a CPRA enforcement petition, the petitioner can pursue discovery as a matter of statutory right as in any civil lawsuit).

● *Garcia v. County of Riverside*, 817 F.3d 635 (9th Cir. 2016) (Affirms denial of qualified and quasi-judicial immunity for wrongful incarceration of person on another person's warrant; holds that jailer has due process obligation to investigate claim of wrongful incarceration where official information puts jailer on notice that arrestee has been mis-identified as the warrant's subject).

● *Bravo v. City of Santa Maria*, 810 F.3d 659 (9th Cir. 2016) (Affirms judgment holding police agency and individual defendants liable under 42 U.S.C. § 1983 for procurement and execution of invalid search warrant invalid; upholds fee award under 42 U.S.C. § 1988);

● *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015) (Action under 42 U.S.C. § 1983; holds that plaintiffs who were organizers of event had standing to challenge the warrantless entry into warehouse violated the Fourth Amendment);

● *Mateos-Sandoval v. County of Sonoma*, 72 F.Supp.3d 997 (N.D. Cal. 2014) (30 day impound of vehicle is a Fourth Amendment "seizure" not justified by an exception to the warrant requirement);

● *Gant et al. v. County of Los Angeles, et al.*, 772 F.3d 608 (9th Cir. 2014) (Claim for wrongful arrest and imprisonment under 14th Amendment and Cal. Civ. Code § 52.1 reinstated and remanded for trial);

● *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) (Estate entitled to damages for decedent's pain and suffering prior to death; successful § 1983 claim for excessive force established claim under Cal. Civ. Code § 52.1; parents have due process § 1983 claim based on wrongful police killing of parents' son) (Robert Mann & Donald W. Cook among the attorneys for the plaintiffs);

**Published Decisions**                    **-28-**                    **EXHIBIT B**

● *Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) (District court abused its discretion in reducing plaintiffs' attorney fees under 42 U.S.C. § 1983) (Robert Mann & Donald W. Cook among the attorneys for the plaintiffs);

● *Mateos-Sandoval v. County of Sonoma*, 942 F.Supp.2d 890 (N.D. Cal. 2013) (Seizure of vehicle under Cal.Veh.Code §14602.6 violated the Fourth Amendment).

● *Rodriguez v. County of Los Angeles*, 217 Cal.App.4th 806 (2013) (Upholding respondent superior liability of county jail for false imprisonment);

● *County of Los Angeles v. Superior Court (Anderson-Barker)*, 211 Cal.App.4th 57 (2012) (Public Records Act - pending litigation);

● *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011) (Action under 42 U.S.C. § 1983; court holds search warrant invalid);

● *Hooper v. County of San Diego*, 629 F.3d 1127 (9th Cir. 2011) (Cal. Penal Code § 148 conviction not a bar to a suit for damages under 42 U.S.C. § 1983);

● *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) (*en banc*) (upholding claim of overbroad search warrant and rejection of qualified immunity), *rev'd in part  Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012) (Robert Mann was counsel of record for Respondents);

● *Lopez v. Youngblood*, 609 F. Supp. 2d 1125 (E.D. Cal. 2009) (damages strip search class action against Kern County);

● *Venegas v. County of Los Angeles*, 153 Cal.App.4th 1230 (2007) (federal "qualified immunity" not a defense to Civil Code § 52.1 action);

● *Perez-Torres v. State of California*, 42 Cal.4th 136 (2007) (Parole agent not immune for wrongful incarceration of person mistakenly identified as a parolee);

● *Craft v. County of San Bernardino*, 468 F. Supp. 2d 1172 (C.D. Cal. 2006) (damages class action for strip searching jail inmates);

● *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (*en banc*) (a civil rights plaintiff's conviction under Cal. Penal Code § 148 does not bar his federal lawsuit; definition of deadly force under *Tennessee v. Garner* and its application to police dog attacks);

● *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) (Civil Code § 52.1 does not require racial bias; falsely arresting person involves "coercion");

● *Gonzalez v. Spencer*, 336 F.3d 832 (9th Cir. 2003) (attorney and law firm liable for accessing minor's juvenile case file without juvenile court authorization);

● *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002) (failure to institute readily available procedures for decreasing the risk of erroneous detention of wrong person on a warrant violates Due Process);

● *Sorchini v. City of Covina*, 250 F.3d 706 (9th Cir. 2001) (federal appellate rules);

**Published Decisions**                    **-29-**                    **EXHIBIT B**

- *Haynie v. Superior Court*, 26 Cal.4th 1061 (2001) (availability of police records under California Public Records Act);

- *Morales v. City of Los Angeles*, 214 F.3d 1151 (9th Cir. 2000) (federal civil rights);

- *County of Los Angeles v. Superior Court (Axelrad)*, 82 Cal. App. 4th 819 (2000) (California Public Records Act);

- *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir. 1999) (civil rights);

- *Fontana Police Department v. Villegas-Banuelos*, 74 Cal. App. 4th 1249 (1999) (California Public Records Act);

- *Fairley v. Superior Court (City of Long Beach)*, 66 Cal.App.4th 1414 (1998) (access to police records under California Public Records Act);

- *City of Los Angeles v. Superior Court*, 41 Cal.App.4th 1083 (1996) (California Public Records Act);

- *Nunley v. City of Los Angeles*, 52 F.3d 792 (9th Cir. 1995) (federal procedure);

- *City of Huntington Park v. Superior Court*, 34 Cal.App.4th 1293 (1995) (statute of limitations in civil rights actions);

- *Hand v. Farmers Insurance Co.*, 23 Cal.App.4th 1847 (1994) (third party beneficiary judgment creditor of insured may sue insurer for breach of the covenant of good faith and fair dealing, "bad faith");

- *Medrano v. City of Los Angeles*, 973 F.2d 1499 (9th Cir. 1992) (civil rights);