UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYES CONTRERAS MURCIA, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF SANTA MONICA, *et al.*,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-05253-FLA (MARx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND RELATED MATTERS [DKT. 61]** |

1

## RULING

Before the court is Named Plaintiffs Reyes Contreras Murcia and Sherman A. Perryman's (together, "Plaintiffs") Motion for Class Certification and Preliminary Approval of Class Action Settlement (the "Motion"). Dkt. 61 "(Mot.")."[1] Defendants City of Santa Monica (the "City"), Ramon Batista, David White, Matthew Lieb, and the Santa Monica Police Department ("SMPD") (collectively, "Defendants") do not oppose the Motion.

On July 3, 2024, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for July 5, 2024. Dkt. 64; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated herein, the court DENIES the Motion with 30 days' leave to amend.

## BACKGROUND

On October 20, 2022, Plaintiffs filed the operative First Amended Complaint ("FAC"), seeking injunctive and monetary relief against Defendants "for engaging in violations of the Fourth, Fifth[,] and Fourteenth Amendments, by seizing without judicial review vehicles driven by unlicensed drivers, and arbitrarily imposing an unjustified '30 Day Impound Fee' in addition to other burdensome fees." Dkt. 29 ("FAC") ¶ 1. Plaintiffs allege Defendants "promulgated, promoted and/or sanctioned and/or enforced a policy, practice or custom, hereinafter called 'Vehicle Seizure Policy,' or 'VSP,'" whereby a City employee "directs or causes the vehicle of an unlicensed driver to be seized without a warrant in order to coerce the vehicle's registered owner to pay an unlawful '30 Day Impound Fee' despite the registered vehicle owner being a licensed driver or[,] if the owner is unlicensed, capable and willing to produce or direct a licensed driver to operate the vehicle." *Id.* ¶ 17.

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear within the documents natively.

Plaintiffs further allege that, for vehicles seized under Cal. Veh. Code § 14602.6 ("§ 14602.6"), Defendants "bar the vehicle's registered owner from reclaiming possession of [the] vehicle unless and until the owner pays an unlawful '30 Day Impound Fee[,]' even if the vehicle is not impounded for the full 30 days." *Id.* ¶ 18.  According to Plaintiffs, Defendants also "bar the vehicle's registered owner from reclaiming possession of the vehicle in less than 30 days[,] even though the owner is a licensed driver or can produce his agent[,] a licensed driver[,] to operate the vehicle and retrieve it from wherever it is stored, and is willing to pay the lawfully accrued towing and storage charges." *Id.* ¶ 19.

On March 1, 2024, the parties filed a Notice of Conditional Settlement, stating they had agreed upon a tentative and conditional class-based settlement, subject to City Council approval.  Dkt. 57 at 1.  On June 10, 2024, Plaintiffs filed the current Motion, seeking class certification for the owners of vehicles affected by the VSP as well as preliminary approval of the Class Settlement Agreement (Dkt. 61-1, the "Settlement Agreement").  On June 17, 2024, Plaintiffs filed with the court a copy of the executed Settlement Agreement signed by all parties, including the authorized signatory for the City.  Dkt. 63-1.

## SETTLEMENT TERMS

**I.    Proposed Class**

The settlement class is defined as: "[o]wners of vehicles impounded by employees of defendants City of Santa Monica and/or Santa Monica Police Department at any time from July 28, 2020 through November 22, 2022 ["the Class Period"], where such impounds were pursuant to Cal. Veh. Code § 14602.6(a)(1)."  Settlement Agreement ¶ 14.

**II.    Payment Terms**

In full settlement of the claims asserted in this lawsuit, Defendants agree to pay a non-reversionary gross settlement amount of $475,000.  Mot. at 8; Settlement ¶ 24.  Plaintiffs contend this results in a net settlement amount of $205,000 or $210,000 after

3

anticipated attorney's fees (not to exceed $235,000), incentive payments of $25,000 to Plaintiffs, and settlement administration costs (not to exceed $25,000) are subtracted from the gross settlement fund. Mot. at 17. Plaintiffs' calculations appear to be mathematically incorrect, as subtracting from the gross settlement fund—by the amounts identified—would result in a net settlement amount of $190,000—not the amount Plaintiffs contend.

### III. Attorney's Fees, Costs, and Service Awards

The Settlement Agreement states: "The total monetary Settlement Fund, including all payments to the Settlement Class Representative Plaintiffs, Settlement Class Members, Settlement Class Counsel, including all attorneys' fees and costs, and all payments for class administration, is $475,000." Settlement Agreement ¶ 24. The Settlement Agreement does not contain any specific provisions regarding incentive payments to Plaintiffs, the estimated amount of administration costs, or the maximum amount of attorney's fees and costs Class Counsel may seek. *See generally id.*

In the Motion, Plaintiffs contend incentive payments to Plaintiffs of $19,400 or $25,000, attorney's fees of $235,000, and "costs (including the projected cost of class administration) estimated not to exceed $25,000" are appropriate and result in a fair and reasonable compromise for each class member's claim. Mot. at 17–18. Plaintiffs do not explain how they calculated these figures.

### IV. Releases

Participating Class Members "fully, finally, and forever settle and release any and all Released Claims," which are defined as:

> [A]ny claim, liability, right, demand, suit, matter, obligation, lien, damage, punitive damage, exemplary damage, penalty, loss, cost, expense, debt, action, or cause of action, of every kind and/or nature whatsoever whether now known or unknown, suspected or unsuspected, asserted or unasserted, latent or patent, which any Releasing Party now has, or at any time ever had, regardless of legal theory or type or amount of relief or damages claimed, which: (i) in any way arises out of, is based on, or relates in any way to the Matters Alleged in the Lawsuit; and/or (ii) is asserted (or could have been

4

1  asserted) in this Action.

2  Settlement Agreement ¶¶ 11, 34.

3  "'Matters Alleged in the Lawsuit' refers to the claims for relief and allegations in the [FAC], whereby Plaintiffs alleged that city officials seized and impounded vehicles pursuant to Cal. Veh. Code § 14602.36." *Id.* ¶ 9. Participating class members "expressly waive the provisions of California Civil Code Section 1542, which provides that A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." Settlement Agreement ¶ 33 (capitalization in original).

**V.   Notice to Settlement Class**

Plaintiffs propose Class Action Claims Administration, Inc. be appointed as the Class Administrator. Class members will receive notice by first-class mail, which will consist of the Class Notice and Proposed Class Settlement and Hearing ("Notice") (Dkt. 61-2), the Class Action Opt-Out Form ("Opt-Out Form) (Dkt. 61-3), and an Updated Address Form ("Address Form") (Dkt. 61-4) (collectively, "Notice Package"). Mot. at 18, 22–23. In addition to mailing the Notice Packet, the Class Administrator will establish a "dedicated website with [a] downloadable form, and offering online submission forms." *Id.* at 18. Notably, the parties do not state class members will receive a copy of the Settlement Agreement in the Notice Packet. *See* Mot. at 18–19; Settlement Agreement ¶¶ 4, 38–41.

**DISCUSSION**

The court will first address whether the class may be certified preliminarily for settlement purposes, before evaluating the fairness, adequacy, and reasonableness of the proposed Settlement, and the adequacy of the proposed notice.

///

I. **Class Certification**

"At the preliminary approval stage, the court may make either a preliminary determination that the proposed class action satisfies the criteria set out in [Fed. R. Civ. P. 23 ('Rule 23')] or render a final decision as to the appropriateness of class certification." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 318 (C.D. Cal. 2016) (quotation marks omitted). Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(a), the plaintiff must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Plaintiffs fail to establish the representative parties will fairly and adequately protect the interests of the class, as required under Rule 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This requirement is met where the named plaintiff and class counsel (1) do not have conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. *Id.* "A lead plaintiff in a class action owes a fiduciary duty to the class." *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 970 (N.D. Cal. 2001). Accordingly, "a putative lead plaintiff must demonstrate ability to discharge the fiduciary duty to the class." *Id*.

Plaintiffs do not discuss the extent of their involvement in this litigation or present facts, supporting declarations, or other evidence to establish they are aware of their fiduciary duties to the class and have prosecuted the action vigorously on the class's behalf. *See* Mot. Furthermore, Plaintiffs' interests do not appear to be aligned with those of other class members, as Plaintiffs appear to seek a greater recovery for

1  their claims than the absent class members would receive. While Plaintiffs
2  characterize these additional payments as "incentive awards," *see* Mot. at 18, these
3  payments do not appear to qualify as such based on the facts presented.

4　　"Incentive awards are payments to class representatives for their service to the
5  class in bringing the lawsuit." *Radcliffe v. Experian Info. Solns.*, 715 F.3d 1157, 1163
6  (9th Cir. 2013). "In cases where the class receives a monetary settlement, the awards
7  are often taken from the class's recovery." *Id.* The Ninth Circuit has instructed
8  district courts "to scrutinize carefully the awards so that they do not undermine the
9  adequacy of the class representatives," and "cautioned that awarding them should not
10 become routine practice" because "if class representatives expect routinely to receive
11 special awards in addition to their share of the recovery, they may be tempted to
12 accept suboptimal settlements at the expense of the class members whose interests
13 they are appointed to guard." *Id.* (quotation marks and brackets omitted).

14　　As the Ninth Circuit has explained: "[w]here a class representative supports the
15 settlement and is treated equally by the settlement, the likelihood that the settlement is
16 forwarding the class's interest to the maximum degree practically possible increases.
17 But if such members of the class are provided with special 'incentives' in the
18 settlement agreement, they may be more concerned with maximizing those incentives
19 than with judging the adequacy of the settlement as it applies to class members at
20 large." *Id.* (cleaned up).

21　　As stated, Plaintiffs do not offer any explanation of the services they have
22 performed on behalf of the class or why such services justify incentive awards, and
23 justify their request instead as follows:

> Pursuant to the settlement and beyond their out-of-pocket loss and
> loss of use of their respective vehicles, class representative Murcia
> will receive an incentive award of about $8,000 (total to Murcia:
> $10,000) while class representative Perryman will receive an
> incentive award of about $11,400 (total to Perryman: $15,000). The
> Perryman payment is higher because he lost the use of his vehicle
> for 31 days and had to pay over $3,600 to retrieve his vehicle; for

7

>Murcia, his out-of-pocket loss was less since his vehicle was impounded for only 18 days and was released without Murcia having to pay for towing and storage charges.

Mot. at 18. As presented, the "incentive awards" requested appear to constitute additional payments to Plaintiffs, providing them with compensation far in excess of their loss of use of their individual vehicles and additional fees paid—rather than for any services performed on behalf of the class. Thus, these payments appear to treat Plaintiffs differently than the absent class members, calling into question Plaintiffs' ability to represent the class adequately. *See Radcliffe*, 715 F.3d at 1163–64.

The court has similar concerns regarding Plaintiffs' counsel's ability to serve as class counsel. The Ninth Circuit has established 25% of a gross settlement fund as the "benchmark" award that should be given in common fund cases. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Id.*; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.").

Plaintiffs request an attorney's fee award of up to $235,000, which comprises 49.5% of the gross settlement fund. *See* Mot. at 17. Plaintiffs do not provide any explanation for why counsel should be awarded attorney's fees at nearly twice the rate of the benchmark fee award. *See* Mot. at 14–15, 17. While attorney Donald W. Cook states "the fees presently exceed just over $200,000" and describes his qualifications in his supporting declaration, counsel does not identify his hourly rate, discuss the

8

legal services he has performed in this action beyond taking and responding to discovery and participating in mediation, or provide sufficient information otherwise for the court to determine whether the amount of attorney's fees requested is reasonable. *See* Mot. at 20–25. In contrast to the high rate of attorney's fees requested, the Motion and Settlement Agreement appears to contain numerous errors, inconsistencies, and omissions, including basic mathematical errors regarding the amount of the net settlement agreement. *See id*. at 17 (identifying the net settlement amount as $205,000 and $210,000).[2]

The court, therefore, finds Plaintiffs fail to establish they and their counsel "will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). *See Radcliffe*, 715 F.3d at 1168 ("[W]here, as here, the settlement agreement is negotiated prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.") (cleaned up).

Accordingly, the court DENIES without prejudice Plaintiffs' request for class certification based on Plaintiffs and their counsel's failure to establish they adequately represent the interests of the class. Having denied the Motion on this basis, the court

---

[2] Without highlighting all the issues in these papers or conducting a full evaluation of the proposed settlement, the court, nevertheless, finds the Settlement Agreement concerning. Notably, the Settlement Agreement does not discuss or contain specific provisions regarding how the net settlement fund is to be divided among class members, what incentive awards are authorized to Plaintiffs, limits on the amount of attorney's fees that can be requested by class counsel, or the process the claim administrator will use to locate class members who cannot be reached. *See* Settlement Agreement. These issues further call into question whether Plaintiffs and their counsel adequately represented the interests of the class during settlement negotiations.

need not address the parties' remaining arguments.  Plaintiffs' request for preliminary approval of the Settlement Agreement is DENIED as moot.

## CONCLUSION

For the aforementioned reasons, the court DENIES the Motion with 30 days' leave to amend.

IT IS SO ORDERED.

Dated: March 11, 2025

FERNANDO L. AENLLE-ROCHA
United States District Judge